**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| DEIDRA MILAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MICROVAST, INC.; MICROVAST HOLDINGS, INC.,<br><br>Defendants. | Case No. 3:24-cv-00627<br><br>Judge Aleta A. Trauger |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL, ATTORNEYS' FEES, AND SERVICE AWARDS**

Plaintiff Deidra Milan, individually and on behalf of all others similarly situated ("Class Members" or "putative Class Members"), respectfully submits this memorandum in support of her motion for final approval of the Class Settlement Agreement and for an award of her reasonable attorneys' fees and expenses and Service Awards. Defendants have reviewed this motion and do not oppose the relief requested herein.

## I. BACKGROUND

In the interest of brevity and efficiency Plaintiffs incorporate the Background outlined in the Memorandum in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement. ECF No. 44.

## II. SETTLEMENT TERMS

The Parties have agreed to settle this matter on behalf of a Class defined as: "all current and former employees of Microvast, Inc., Microvast Holdings, Inc., Microvast Energy, Inc., Microvast Advanced Membrane, Inc., Microvast Advanced Materials, Inc., Microvast Power

Solutions, Inc., and any of their subsidiaries or affiliates, who were terminated in 2024 as part of one or more alleged mass layoffs without proper notice." ECF No. 45-2, PageID 291.

### A. Settlement Benefits

The Settlement provides significant relief to participating Class Members. The Settlement employs both a cash-component and a stock component.

First, Defendants will pay $200,000 into a non-revisionary common fund ("Settlement Fund"). ECF No. 45-2, PageID 294. Second, Defendants will transfer 275,000 Shares of Microvast Stock (MVST) to a third-party designated by Class Counsel to be held in trust and liquidated to provide monetary relief to the class.[1] *Id.* at PageID 295. Once liquidated, the cash from the shares will be transferred to the Settlement Fund, and altogether, the combined funds shall comprise the Settlement Fund. *Id.* Following the payment of any service awards, attorneys' fees, expenses, reasonable costs of Settlement Administration, and reasonable costs associated with liquidation of the Stocks, the Settlement Fund will provide Class Members with cash payments. *Id.* at 295–96.

Settlement Class Members do not need to submit a claim form or take any other action to receive a distribution from the Settlement Fund. Rather, within 10 days after the Settlement Agreement's Effective Date, the Settlement Administrator will mail each Settlement Class Member a check in the amount of the Member's share of the Net Settlement Fund according to the Allocation Plan, less withheld Employment Taxes. *Id.* at 296. Any remaining funds will be distributed to a charitable organization as a *cy pres* payment, with the Court's approval. *Id.* at 297.

---

[1] Class Counsel was unable to liquidate the stock prior to the Final Approval. Defendants sought approval under 15 U.S.C. § 77c(a)(10), which requires a final hearing. Without that approval, the stocks could not be transferred and used immediately. Upon Final Approval, Defendants are prepared to transfer the stock promptly, and Class Counsel has retained Kroll Settlement Administration, LLC to facilitate the liquidation. Kroll is prepared and well-positioned to accomplish this as soon as the stock shares are transferred. *See* Decl. of Lindsey Marquez, ¶ 3.

The Allocation Plan is simple and directly tied to the WARN Act's damages scheme. *See* 29 U.S.C. § 2104(a)(1). Each Settlement Class Member will be entitled to 60 days' back pay (calculated according to the Member's daily wage rate), one day per alleged WARN Act violation, divided by the total back pay owed to the entire Settlement Class for 60 days, multiplied by the Net Settlement Fund.

In exchange for this relief, Plaintiff will extend a general release to Microvast, Inc., Microvast Energy, Inc., Microvast Advanced Membrane, Inc., Microvast Advanced Materials, Inc., Microvast Power Solutions, Inc., Microvast Holdings, Inc., and their affiliates, of "any and all claims relating to or arising out of Plaintiff's employment." *Id.* at PageID 298-99. Settlement Class Members will release claims "which were asserted in the Complaint, or which materially relate to, or arise from, the violations of the WARN Act alleged in the Class Action Complaint on the Effective Date . . . ." *Id.* at PageID 299.

**B. Service Awards and Attorneys' Fees**

As the Class Representative, the Settlement Agreement provides that Plaintiff Milan should receive $5,000 for her service to the class. If approved, the Service Award for the Class Representatives would be paid out of the Settlement Fund, but the proposed Settlement is not conditioned upon the Court's award of any service awards. *Id.* at 296. Further, under the terms of the proposed Settlement, Plaintiffs may file a motion for attorney's fees for up to 33.33% to be paid from the Settlement Fund, and costs, which amount to $5,857.51 (to date). *Id.* at PageID 295.

## III. THE NOTICE PROGRAM

Before final approval can be granted, Due Process and Rule 23 require that the notice provided to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed.

R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Notice "need only be reasonably calculated . . . to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *UAW v. Gen. Motors Corp.*, 2006 WL 891151, at *33 (E.D. Mich. Mar. 31, 2006) (citation omitted). Notice must clearly state essential information regarding the settlement, including the nature of the action, terms of the settlement, and class members' options. *See* Fed. R. Civ. P. 23(c)(2)(B); *Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 292 (W.D. Ky. 2014). At its core, "[a]ll that the notice must do is fairly apprise the prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interest." *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 630 (6th Cir. 2007).

Due Process does not require that every class member receive actual notice, and a notice plan is reasonable if it reaches at least 70% of the class. *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008); FED. JUDICIAL CTR., JUDGES' CLASS ACTION NOTICE AND CLAIMS PROCESS CHECKLIST AND PLAIN LANGUAGE GUIDE 3 (2010); *see also In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 WL 5184352, at *12 (W.D. Ky. Dec. 22, 2009) (holding that the notice plan was "the best notice practicable" where combination of mail and publications notice reached 81.8% of the class). The notice program here meets this standard, as it provided notice to 100% of the Settlement Class. Decl. of Veronica Olivares of CPT Group, LLC In Connection with Final Approval of Settlement ("Admin. Decl.") ¶ 13.

Indeed, the Court approved the proposed notice program, finding it met the requirements of Rule 23 and Due Process. ECF Nos. 46, 47. The notice program has now been fully carried out by the Settlement Administrator, CPT Group, LLC. On March 13, 2026, the Administrator arranged for the notice packet to be printed and mailed to the 111 individuals in the Settlement

Class. *See id*. ¶ 7. Additionally, copies of the summary Notice were emailed to 52 Settlement Class Members for whom an email was available. *See id.* Three mailed packets were returned as undeliverable. *See id.* ¶ 8. Of the 52 emailed notice packets, only 3 were returned as undeliverable. *See id.* The Administrator performed a skip trace to locate better addresses and re-mailed all 6 notices successfully. *Id.* ¶ 9. Furthermore, the Administrator maintained both a password-protected website and a telephone hotline for the benefit of Settlement Class Members. *See id*. at ¶ 3. To date, the Administrator has received no exclusion requests and no objections. *See id.* ¶¶ 10–13.

## IV. ARGUMENT

### A. The Proposed Settlement Class Should Be Certified.

Pursuant to Federal Rule of Civil Procedure 23, when granting final approval to a class settlement agreement, the Court must conditionally certify the proposed class. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is proper if the proposed class satisfies the numerosity, commonality, typicality, and adequacy of representation requirements. Fed. R. Civ. P. 23(a). Because Plaintiff seeks certification pursuant to Rule 23(b)(3), Plaintiff must also demonstrate that common questions of law or fact predominate over individual issues in the matter and that a class action is the superior mechanism to adjudicate Plaintiff's claims. *Amchem*, 521 U.S. at 615–16. This Court has broad discretion to determine whether certification here is appropriate. *See In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013). As set forth below, each of the requirements for class certification are satisfied here.

#### i. The Class meets the requirements of Rule 23(a).

***Numerosity and Ascertainability.*** The first prerequisite is that the "class is so numerous that joinder of all members is impracticable." Rule 23(a)(1). "In most cases, a class in excess of

forty members will do." *Curry v. SBC Commc'ns, Inc.*, 250 F.R.D 301, 310 (E.D. Mich. 2008). The ultimate number of individuals in the Class is 111 employees, Admin. Decl. ¶ 13, satisfying the numerosity requirement for purposes of settlement. The Class is also ascertainable, as Defendants know the identity of each of these Class Members and provided that list to CPT Group, Inc. *See Kinder v. Nw. Bank*, 278 F.R.D. 176, 182 (W.D. Mich. 2011) (class must be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member").

***Commonality.*** Rule 23(a)(2) is satisfied when questions of law or fact are common to the class, the resolution of which will bring a classwide resolution. Fed. R. Civ. P. 23(a)(2). It may be indicated when the claims all "depend upon a common contention," with a single common question sufficing. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The common contention must be capable of class-wide resolution and the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Here, myriad common questions of both law and fact exist. Plaintiff's and putative Class Members' claims derive from the same mass layoff or plant closing and allege the same wrongdoing—Defendants failed to give proper notice to employees. Unsurprisingly, multiple courts have commented that "claims under the WARN Act are 'particularly amenable to class litigation.'" *Bergman v. Thelen LLP*, 2016 WL 7178529, at *5 (N.D. Cal. Dec. 9, 2016) (citing *Finnan v. Rothschild & Co.*, 726 F. Supp. 460, 465 (S.D.N.Y. 1989)). Plaintiff's claims present the same legal questions, including whether Defendants were covered under the WARN Act, whether Defendants complied with the WARN Act's notice requirements, and whether an exception under the WARN Act applies. Thus, common questions of both law and fact exist.

***Typicality.*** A class representative's claims must be typical of those of other class members. Fed. R. Civ. P. 23(a)(3). Plaintiffs and the Class Members satisfy the typicality requirement where their "claim arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc*., 511 F.3d 554, 561 (6th Cir. 2007). Typicality assesses "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998). The claims need not be identical; rather, they need only "arise from the same course of conduct." *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997). The "court must inquire whether the interests of the named plaintiff are aligned with those of the represented group, such that in pursuing his own claims, the named plaintiff will also advance the interests of the class members.'" *Garner Properties & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 623 (E.D. Mich. 2020). Plaintiff satisfies the typicality requirement here because her claims arise out of the same mass layoff/plant closing as other putative Class Members and present the same legal theories as would be presented if each Class Member filed their own individual cases. Because Plaintiff's claims arise out of the same mass layoff/plant closing, the typicality requirement is met.

***Adequacy.*** Class representatives must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). "Class representatives are adequate when it appears that they will vigorously prosecute the interest of the class through qualified counsel . . . which usually will be the case if the representatives are part of the class and possess the same interest and suffer the same injury as the class members." *UAW*, 497 F.3d at 626. Plaintiff here has no conflict with other Class Members, participated actively, and is represented by attorneys experienced in class actions,

including WARN Act cases. Declaration of J. Gerard Stranch, IV in Support of Plaintiffs' Motion for Final Approval ¶ 10 ("Stranch Decl."). Class Counsel regularly engages in WARN Act litigation, has the resources necessary to prosecute this case, and has frequently been appointed lead class counsel in WARN Act class actions, among other employment and consumer protection class actions. *Id.* ¶ 14. Class Counsel has devoted substantial resources to this action: investigating Plaintiff's claims; obtaining and analyzing Plaintiff's circumstances; participating in mediation; and, ultimately, negotiating a Settlement that provides meaningful relief for the Class in the face of substantial litigation risks. *Id.* ¶¶ 4–9. Class Counsel has vigorously prosecuted this case and will work diligently for the Class throughout the administration process.

**ii. The Class meets the requirements of Rule 23(b)**

After satisfying Rule 23(a), a plaintiff must also satisfy one of the three requirements of Rule 23(b) for a court to certify a class. Fed. R. Civ. P. 23(b); *Merenda v. VHS of Michigan, Inc.*, 296 F.R.D. 528, 536 (E.D. Mich. 2013). Plaintiffs seek certification under Rule 23(b)(3), which requires that (i) common questions of law and fact predominate over individualized ones, and that (ii) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). "A plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Beattie*, 511 F.3d at 564. This requirement considers "the difficulties likely to be encountered in the management of a class action" and issues with individual litigation. *Id.*; *see also Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action."). The proposed Class satisfies the above.

Common questions of law and fact also predominate. Predominance focuses on whether the defendant's alleged liability is common enough to warrant class-wide adjudication. *Amchem*, 521 U.S. at 623. The proposed class must be "sufficiently cohesive to warrant adjudication by representation." *Id.* Though similar to the commonality requirement of Rule 23(a), Rule 23(b)(3) "contains the more stringent requirement that common issues predominate over individual issues." *Machesney v. Lar-Bev of Howell, Inc.*, 317 F.R.D. 47, 61 (E.D. Mich. 2016). Predominance is met if a single factual or legal question is "at the heart of the litigation." *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). Here, common questions of law and fact predominate because Plaintiff and Class Members' claims all arise from the exact same mass layoff/plant closing, the same notification concerning the termination of employment, the same statutory duty Plaintiff alleges Defendants owed to her and Class Members, and the same types of harms and damages from the mass layoff. Thus, Defendant's alleged course of conduct was uniform across the Class, so the claims "will prevail or fail in unison." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 859 (6th Cir. 2013). Because classwide determination of this issue will be the same for all, predominance is satisfied.

Moreover, a class action is the superior method to fairly, adequately, and efficiently adjudicate this matter. "The superiority requirement of Rule 23(b)(3) is met if the class action is a better way than individual litigation to adjudicate a claim." *Calloway v. Caraco Pharm. Labs., Ltd.*, 287 F.R.D. 402, 407–08 (E.D. Mich. 2012). Indeed, to "vindicat[e] the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Amchem*, 521 U.S. at 617. Adjudicating individual actions here is impracticable; the amount in dispute per person is too small to support individual cases. So, the Court should certify the Class for the purpose of this Settlement pursuant to Rule 23(b)(3), which Defendants do not oppose.

## V. The Settlement Should Be Granted Final Approval

The Federal Rules of Civil Procedure require judicial approval of class action settlements. *Halliday v. Weltman, Weinber & Reis Co., L.P.A.*, 2013 WL 692856, at *1 (E.D. Mich. Feb. 26, 2013) (citing Fed. R. Civ. P. 23(e)). At final approval, the ultimate issue is whether the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983). Courts within the Sixth Circuit recognize a strong "federal policy favoring settlement of class actions." *UAW*, 497 F.3d at 632 (citation omitted); *see also Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 830 (E.D. Mich. 2008). Rule 23 of the Federal Rules of Civil Procedure was amended in 2018 to front-load the class action settlement process to the preliminary approval stage. *See Hacker v. Elec. Last Mile Sols. Inc.*, 2024 WL 1231257, at *4 (D.N.J. Mar. 21, 2024) ("At the preliminary approval stage, the Court is required to peer ahead, and to ask whether it is 'likely' to ultimately approve the proposed settlement at the end-of-the-line fairness hearing.") (quoting Fed. R. Civ. P. 23(e)(1)(B)).

Rule 23(e)(2) provides factors for the Court to determine if a settlement is "fair, reasonable, and adequate." The Rule 23(e)(2) factors are: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed attorney's fee, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(2); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

In addition to these factors, the Sixth Circuit has laid out its own factors: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount

of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *UAW*, 497 F.3d at 631. As described below, each factor affirms the fairness, reasonableness, and adequacy of the Settlement, and supports final approval.

### A. The Rule 23(e) factors weigh in favor of Final Approval

The Settlement easily satisfies the Rule 23(e)(2) factors. First, as explained, Plaintiffs and Class Counsel have adequately represented the Class and secured an excellent result. *See supra* § II(a). Second, the Settlement was negotiated at arms' length, which included a neutral mediation with highly qualified and renowned mediator, Michael Russell, taking place after which the Parties had exchanged sufficient information to adequately assess the strengths and weaknesses of the case. Stranch Decl., ¶ 4. Third, the relief provided is clearly adequate when taking into account the factors listed in Rule 23. The Settlement provides a substantial recovery for the Settlement Class and does so without additional delay and the uncertainty of litigation in the form of a $200,000 Settlement Fund and an additional cash-equivalent payment of 275,000 shares (valued, presently, at an additional $550,000). *Id.* ¶ 17. This represents a substantial portion of the relief sought by the class of 111 employees. Fourth, all Settlement Class Members are treated equally. Stranch. Decl. ¶ 8. Settlement Class Members can be (and have been) identified from Defendant's records and the WARN Act notices it sent. Distribution from the Settlement Fund will be made to Settlement Class Members on a *pro rata* basis based on the Members' respective daily wage rates, which can be determined for each Settlement Class Member from Defendant's records. *Id.* Moreover, the Settlement makes these benefits available now, without the delay of prolonged litigation and the risk that Class Members would be left with nothing. Stranch Decl. ¶ 12. Finally, Plaintiff's Service Award and Class Counsel's attorneys' fees and costs are reasonable and will be subject to Court

approval so that Class Members will have a fair opportunity to analyze these provisions. Stranch Decl. ¶ 21.

Accordingly, the Rule 23(e) factors are satisfied in this proposed Settlement.

### B. The *UAW* factors weigh in favor of Final Approval

Factor 1: No risk of fraud or collusion: The first *UAW* factor is "the risk of fraud or collusion." *UAW*, 497 F.3d at 631. "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt*, 581 F. Supp. 2d at 838. When, as here, a settlement was reached through arms'-length negotiations through an experienced mediator, there is no evidence of fraud or collusion. *See, e.g.*, *Sheick v. Auto. Component Carrier, LLC*, 2010 WL 3070130, at *13 (E.D. Mich. Aug. 2, 2010) ("[N]egotiations of the Settlement Agreement were conducted at arm's-length by adversarial parties and experienced counsel, which itself is indicative of fairness, reasonableness, and adequacy."). The Settlement was obtained after a mediation with Michael Russell, a prominent mediator in Nashville, Tennessee, and in class action litigation. Stranch Decl. ¶ 5. Thus, far from any evidence of collusion, the Settlement here is the result of significant and hard-fought negotiations at arms'-length. This factor strongly supports approval.

Factor 2: Litigation through trial would be costly, complex, and time consuming: The second *UAW* factor is "the complexity, expense and likely duration of the litigation." *UAW*, 497 F.3d at 631. Most class actions are inherently risky, and thus "[t]he obvious costs and uncertainty of such lengthy and complex litigation weigh in favor of settlement." *UAW*, 2006 WL 891151 at *17. The same is true here. Class action litigation under the WARN Act is inherently complex, highly technical, time consuming, and costly. Despite being a local matter, this case also involved the potential of being transferred to a Texas court. Absent this Settlement, the Parties would have to

litigate through multiple risky expensive phases, including class certification, summary judgment, a trial, and appeals. This would take years to finally resolve and could end up with the same result obtained through this Settlement—or it could result in no recovery for the Class.

The Settlement, on the other hand, permits a prompt resolution of this Action on favorable terms that are fair, reasonable, and adequate to the Class. This result has been accomplished years earlier than if the case proceeded to judgment through trial and/or appeals and provides certainty while prolonged litigation does not and could result in defeat for the Class at summary judgment, at trial, or on appeal, or result in a jury award of the same or lesser recovery years down the road. Consequently, this *UAW* factor weighs in favor of final approval of the Settlement.

<u>Factor 3: The Parties exchanged formal discovery and informal discovery during mediation:</u> The third *UAW* Factor is "the amount of discovery engaged in by the parties." *UAW*, 497 F.3d at 631. Here, the Parties exchanged formal information in the course of the litigation and informal discovery during the mediation process, which was sufficient to empower Class Counsel to provide an informed demand and to negotiate this Settlement. Stranch Decl. ¶ 4. Class Counsel's experiences in similar matters, as well as the efforts made by counsel on both sides, confirm that they are and were sufficiently well apprised of the facts of this action and their respective cases to make an intelligent analysis of the Settlement.

<u>Factor 4: Prolonged litigation brings significant risks:</u> The fourth *UAW* factor is "the likelihood of success on the merits." *UAW*, 497 F.3d at 631. Should litigation continue, Defendants would continue to contest a motion to transfer, might contest class certification, and would eventually move for summary judgment. Though Plaintiff and class counsel believe strongly in the merits of this Action, they cannot deny the inherent risks in WARN Act cases. Moreover, at the time the settlement was reached in this case, the Court had not certified a class, and the Parties

anticipate that such a determination would only be reached after lengthy discovery and exhaustive class certification briefing—potentially years down the line. In Class Counsel's experience, these additional steps in litigation can take years to resolve. Stranch Decl. ¶ 10. The proposed Settlement eliminates this risk, expense, and delay and awards Class Members payment promptly. This factor favors final approval.

Factor 5: Class Counsel and the named Plaintiff support the Settlement: The fifth *UAW* factor is "the opinions of class counsel and class representatives." *UAW*, 497 F.3d at 631. "The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement." *UAW*, 2008 WL 4104329, at *18. Class Counsel and Plaintiff support the Settlement. This Settlement is an excellent result for Class Members considering the risks of continuing to litigate. Stranch Decl. ¶ 13. This factor thus also favors final approval.

Factor 6: The Reaction of absent Class Members is overwhelmingly positive: The sixth *UAW* factor is "the reaction of absent class members." *UAW*, 497 F.3d at 631. In most class settlements, a small number of opt outs and objections "are to be expected" and do not impact a settlement's fairness. *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003); *see also Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (inferring that most "class members had no qualms" with settlement where 79 out of 11,000 class members objected). No Class Members have requested exclusion to date, and no Class Member has objected. Admin. Decl. ¶¶ 10–13. This *UAW* factor therefore plainly weighs in favor of final approval. *See, e.g.*, *Hanlon v. Chrysler*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness.").

Factor 7: The Settlement serves public interest: The seventh and final *UAW* factor is

whether the Settlement supports "public interest." *UAW*, 497 F.3d at 631. "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *In re Cardizem*, 218 F.R.D. at 530. Further, when individual class members seek relatively low damages, "economic reality dictates that [their] suit proceed as a class action or not at all." *Eisen*, 417 U.S. at 161. Though Defendants continue to deny liability, Class Counsel believes these cases serve the public interest, in addition to the public interest in settling litigation without further use of judicial resources. Indeed, Class Counsel strongly believes in pursuing redress for WARN Act violations, which further encourages companies to provide notice to their employees before mass layoffs. Stranch Decl. ¶ 9. This factor therefore supports final approval.

## VI. The Court Should Affirm Its Appointments of Class Counsel and Class Representatives

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interest of the class." Rule 23(g)(1)(B). In making this determination, courts generally consider: (1) proposed class counsel's work in identifying or investigating potential claims and defenses; (2) proposed counsel's experience in handling similar complex class actions, and the types of claims asserted in the case; (3) proposed class counsel's knowledge of the applicable law; and (4) proposed counsel's resources committed to representing the proposed class. Rule 23(g)(1)(A)(i-iv); 4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 13:48 (6th ed.).

In its order preliminarily approving the Class Settlement, the Court conditionally appointed J. Gerard Stranch, IV as Class Counsel. Dkt. 51, at 3–4. The Court should affirm this conditional appointment. Mr. Stranch has successfully steered this matter through hard-fought negotiations and throughout this settlement approval process. Mr. Stranch has proven himself capable of

representing the Class and producing significant results. Moreover, Mr. Stranch has significant experience in employment class action litigation, including under the WARN Act, and consumer protection class action litigation more generally. Stranch Decl. ¶ 10. Thus, the Court should affirm its appointment of Mr. Stranch as Class Counsel. Moreover, the Court should affirm its conditional appointment of Plaintiff as Class Representative. Plaintiff has represented the Class admirably and has at all times assisted Counsel in prosecuting this matter as was necessary—as is evidenced by the outcome here. *Id.* ¶ 15. Thus, the Court should affirm their appointment as Class Representatives.

## VII. The Court should deem the Stock Settlement consistent with 15 U.S.C. § 77c(a)(10).

Under 15 U.S.C. § 77c(a)(10), a security is exempt from the Securities Act registration when it "is issued in exchange for one or more bona fide outstanding . . . claims . . . . where the terms and conditions of such issuance and exchange are approved, after a hearing upon the fairness of such terms and conditions at which all persons to whom it is proposed to issue securities in such exchange shall have the right to appear." Courts recognize that the notice and hearing processes contemplated under Rule 23 are the "functional equivalent of the full disclosure which would be provided in an appropriate prospectus and registration statement." *SEC v. Blinder Robinson & Co., Inc.*, 511 F. Supp. 799, 802 (D. Colo. 1981). "Those receiving the offer under the terms of the settlement agreement have had a full and fair opportunity to learn everything required to make their decision." *Id.*; *see also Cullen v. RYVYL Inc.*, 2025 WL 3731036, at *17 (S.D. Cal. Dec. 19, 2025) (approving settlement shares pursuant to section 3(a)(10) of the Securities Act, 15 U.S.C. § 77c(a)(10)). Because the shares here fall within this exemption, the Court should find the exemption applicable to permit Microvast Holdings, Inc., to rely on the Section 3(a)(10) registration exemption when issuing the Settlement Shares to the Settlement Class.

### VIII. Class Counsel's Fee Request is Reasonable

In conjunction with final approval, the Court should approve Class Counsel's request for attorneys' fees to Class Counsel in the amount of 33.33% of the final Settlement Fund (*i.e.*, once all stocks are liquidated[2]), which Defendants agreed not to oppose, as part of the proposed Settlement. ECF No. 45-2, PageID 295. Particularly where a portion of the settlement is made of cash equivalent payments, the percentage-of-the-benefits method is the most appropriate and efficient way of awarding fees. *See In re ArmesisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 133–34 (D.N.J. 2002) (collecting cases); *Delaware Cnty Emp'ees Retirement Sys. v. Adapthealth Corp.*, 739 F. Supp. 3d 270, 282 (E.D. Pa. 2024). In addition, Plaintiff's counsel demonstrates counsel's confidence in the settlement by seeking to be paid fees and expenses out of the same settlement consideration to be received by the class in the same proportions as will be received by each class member, and also waiting to receive any such fees or expenses until the class receives its distribution. *See In re Brown Co. Sec. Litig.,* 355 F. Supp. 574, 593 (S.D.N.Y.1973) (requiring counsel to accept *part* of their fees in-kind "because they have expressed faith and confidence in the value of the settlement for their clients"). Therefore, notwithstanding the unique attributes of this settlement structure, courts approve similarly-structured settlements. Under the terms of the Settlement, Defendants agreed that they will not oppose Class Counsel fee request of one third of the common fund.

---

[2] In essence, this amounts to 33.33% of the cash and stock, which equates to roughly $66,660 and 91,658 shares of MVST. Plaintiffs' counsel notes that all stock will, however, be liquidated by the time of final distribution, and Plaintiffs' counsel will be paid from the final Settlement Fund. Courts in stock settlements have approved similar settlement procedures, finding them "fair and equitable to all concerned." *Adapthealth Corp.*, 739 F. Supp. 3d at 282 (approving settlement where "Lead Counsel under this Agreement are the ones who have the authority to sell all shares").

### A. The Value of the Settlement

The Settlement provides for both a $200,000 common fund and an additional 275,000 shares of MVST stock (which will be liquidated). "Stock, like cash, is simply a form of compensation secured on the class's behalf. There is no reason it should be treated differently than cash." *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 409 (7th Cir. 2000). Considering the value of the stock,[3] the settlement value still exceeds $750,000. This still amounts to nearly 50% of the total damages, well exceeding other court-approved monetary recoveries obtained for classes of plaintiffs in WARN Act and other class settlements.[4] *See, e.g., Philips v. Muchnery Inc.*, 2020 WL 6135996, at *7 (N.D. Cal. Oct. 19, 2020) (approving WARN settlement achieving 26% of total recovery); *Farrar v. Workhorse Grp., Inc.*, 2023 WL 5505981, at *7 (C.D. Cal. July 24, 2023) (approving class action settlement where recovery represented 3% of estimated damages); *see also Halliburton*, 2018 WL 1942227, at *5 (observing that courts frequently approve class action settlements when settlement amount is small fraction of what class could recover at trial).

### B. Plaintiffs' Fee Request is Reasonable under *Gascho*

Federal Rule of Civil Procedure 23(h) expressly authorizes courts in class action settlements to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). As the U.S. Supreme Court has observed, under the law, "lawyer[s] who recover[ ] a common fund . . . [are] entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Props.,*

---

[3] Given uncertainty in the market, the value of the stock is fairly volatile.

[4] The cash component of the settlement alone – $200,000 – which represents over 10% of total recovery falls within these thresholds and would by itself merit approval.

*Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) (citation omitted). A district court has discretion to use either the percentage of the benefit method or the lodestar method to calculate attorneys' fees. *Id.* If a fee award is reasonable under one of these two methods, it is within the court's discretion, and the court is not required to "crosscheck" with the other method. *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269 282–83 (6th Cir. 2016).

The "trend" has been towards using the percentage of the benefit method in awarding attorneys' fees. *Rawlings*, 9 F.3d at 515. This method "more accurately reflects the results achieved." *Id.* at 516. It has "a number of advantages: it is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation." *Id.* By contrast, "the lodestar method has been criticized for being too time-consuming of scarce judicial resources." *Id.* (citing *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269–70 (D.C. Cir. 1993); *Court Awarded Attorneys' Fees*, Report of the Third Circuit Task Force, 108 F.R.D. 237, 250 (1985)). Under the lodestar method, "[d]istrict courts must pore over time sheets, arrive at a reasonable hourly rate, and consider numerous factors in deciding whether to award a multiplier." *Id.* "With the emphasis it places on the number of hours expended by counsel rather than the results obtained, it also provides incentives for overbilling and the avoidance of early settlement." *Id.*

Indeed, "[i]t would not be appropriate for Class Counsel to receive a lower award because Settlement Class Members choose not to claim funds that are easily available to them." *Gokare v. Fed. Express Corp.*, 2013 WL 12094887, at *6 (W.D. Tenn. Nov. 22, 2013). "In calculating a percentage fee award in a class action involving a settlement fund, the Supreme Court has recognized 'that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole,' even

if part of the fund reverts to the defendant." *In re Comcast Corp. Set-Top Cable TV Box Antitrust Litig.*, 333 F.R.D. 364, 386 (E.D. Pa. 2019) (quoting *Boeing*, 444 U.S. at 478); *see also Boeing*, 444 U.S. at 480 (holding that the class members' "right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel"); *Drazen v. Godaddy.com, LLC*, 2020 WL 8254868, at *12 (S.D. Ala. Dec. 23, 2020) (citing *In re Sunbeam Secs. Litig.*, 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001)). The common benefit doctrine is applied the same way to claims-made or partial claims-made settlements and is not limited by the number of individuals that ultimately make claims. *See Poertner v. Gillette Co.*, 618 F. App'x 624, 628 n.2 (11th Cir. 2015) ("[P]roperly understood a claims-made settlement is . . . the functional equivalent of a common fund settlement where the unclaimed funds revert to the defendant; indeed, the two types of settlements are fully synonymous.") (quoting 4 Newberg & Rubenstein on Class Actions § 13:7 (6th ed.)) (internal citations omitted).

"Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000). "[C]ourts within this circuit have found one-third common fund attorney's fee awards to be reasonable" in complex litigation. *Ware*, 2020 WL 2441415, at *16; *see also Hosp. Auth. of Metro. Gov't of Nashville v. Momenta Pharms., Inc.*, 2020 WL 3053468, at *1 (M.D. Tenn. May 29, 2020) (awarding a one-third fee of $40 million from a $120 million settlement and noting that a one-third fee "is certainly within the range often awarded in common fund cases, both nationwide and in the Sixth Circuit"); *Cassell v. Vanderbilt Univ.*, 2019 WL 13160853, at *1 (M.D. Tenn. Oct. 22, 2019) (awarding one-third fee and noting that amount is "common"); *Fusion Elite All Stars v. Varsity Brands, LLC*, 2023 WL

6466398, at *6 (W.D. Tenn. Oct. 4, 2023) (awarding fee of one-third of $43.5 million settlement) (citing *In re Skelaxin (Metaxalon) Antitrust Litig.*, 2014 WL 2946459, at *1 (E.D. Tenn. June 30, 2014) ("The Court finds that the requested counsel fee of one third [of the settlement recovery] is fair and reasonable and fully justified. The Court finds it is within the range of fees ordinarily awarded."); *In re Se. Milk Antitrust Litig.*, 2013 WL 2155387, at *8 (E.D. Tenn. May 17, 2013) (awarding one-third fee from $158.6 million settlement)); *Hebert v. Chesapeake Operating, Inc.*, 2019 WL 4574509, at *8 (S.D. Ohio Sept. 20, 2019) (finding that 33% in fees "is typical").

In WARN Act cases, in particular, courts have found that an award of one-third is typical and reasonable. *See, e.g.*, *In re AWTR Liquidation, Inc.*, 2013 WL 6859166, at *2 (Bankr. C.D. Cal. Dec. 13, 2013) (concluding one-third fee in WARN Act case was appropriate); *Mees v. Skreened, Ltd.*, 26 WL 67521, at *5 (S.D. Ohio Jan. 6, 2016) (same); *Giuppone v. BH S&B Holdings,* LLC, 2011 WL 5148650, at *9 (S.D.N.Y. Oct. 28, 2011) ("[I]n more than 30 WARN actions class counsel was awarded a one-third fee."); *Knapp v. Badger Technologies, Inc.*, 2015 WL 3745303, at *5 (W.D.N.Y. June 15, 2015) (awarding one-third fee in WARN Act case); *Assif v. Titleserv, Inc.*, 2014 WL 12843780, at *12 (E.D.N.Y. Aug. 25, 2014) (same).

Beyond the reasonableness of the percentage of the benefits, some courts consider six factors when determining the reasonableness of class action fees: (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. *Bowling v. Pfizer, Inc.*, 102 F.3d 777 (6th Cir. 1996). A court need not evaluate each factor, and, when a percentage is sought, attorney time is often not submitted. *See Ware v. CKF Enters., Inc.*, 2020 WL

2441415, at *16 (E.D. Ky. May 12, 2020) (noting that class counsel did not provide time information but finding a one-third fee reasonable where the other factors favored that amount).

A fee of one third from the Settlement Fund is appropriate here. First, the value of the benefit to the Settlement Class is significant—an approximately $750,000 common fund—which will be used to provide cash payments to Settlement Class. Class Counsel achieved this substantial amount avoiding the risk and delay for the Class that would come with continued litigation. Second, Class Counsel took this litigation on a purely contingent fee basis, meaning they risked never recovering any fee for their time unless the litigation was successful. Stranch Decl. ¶ 19. *See e.g.*, *Fulton-Green v. Accolade, Inc.*, 2019 WL 4677954, at *13 (E.D. Pa. Sept. 24, 2019) ("Class Counsel invested considerable resources into this case with no guarantee that they would recover those costs given that they were retained on a contingency fee basis. This factor again weighs in favor of determining that the fee is reasonable.").

Third, society has a stake in rewarding attorneys who produce benefits in WARN Act because such suits serve not only to compensate employees but also to deter employers from violating federal employee rights and advance the remedial purpose of the WARN Act, *e.g.*, "ensuring an income stream, or, in the words of the governing regulation, . . . 'provid[ing] protection to workers, their families and communities." *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1159 (9th Cir. 2001) (quoting 29 C.F.R. § 639.1(a)). Fourth, courts recognize that "WARN Act cases are particularly risky cases to take on a contingent basis, since defendants are generally distressed companies in financially troubled conditions (thus leading to the necessity for mass layoffs or a plant closing)." *Rodriguez v. Infinite Care, Inc.*, 2016 WL 6804430, at *8 (E.D. Pa. Nov. 17, 2016). Further, counsel on both sides of this case are highly skilled in class actions, in general, and WARN Act class action

cases, in particular. Stranch Decl. ¶ 14; *see* Declaration of J. Gerard Stranch, IV in Support of the Unopposed Motion for Preliminary Approval of the Class Settlement, Ex. A (Firm Resume). Moreover, Class Counsel have thus far received no objections or requests to be excluded.

Thus, the relevant factors support approving a payment of 33.33% of the total common settlement fund (which equates to approximately $66,660 and 91,658 shares of MVST).

## IX. Class Representatives' Service Awards are Reasonable

The Court should also approve a modest service award of $5,000 to the Class Representative. "[C]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Ross v. Jack Rabbit Servs., LLC*, 2016 WL 7320890, at *5 (W.D. Ky. Dec. 15, 2016) (internal quotations omitted). Such awards "encourage individuals to undertake the responsibilities and risks of representing the class and recognize the time and effort spent in the case." *In re Anthem Data Breach Litig.*, 2018 WL 3960068, at *30 (N.D. Cal. Aug. 17, 2018). In determining whether to approve service awards, courts in the Sixth Circuit have considered the actions taken by the Class Representatives on behalf of the proposed Class, and the time, effort, and risk incurred as a result of that representation. *Ross*, 2016 WL 7320890, at *5 (quotation omitted). As to amount, courts in the Sixth Circuit commonly award between $5,000 and $10,000 per representative. *See, e.g.*, *Salinas v. U.S. Xpress Enters., Inc.*, 2018 WL 1477127, at *10 (E.D. Tenn. Mar. 8, 2018) (collecting cases in which courts approved service payments to named plaintiffs between $7,500 and $10,000). That is in line with other circuits and with what empirical studies have observed. *See, e.g.*, *In re Anthem*, 2018 WL 3960068, at *31 (noting the "benchmark" in the Ninth Circuit is $5,000); *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867 (8th Cir. 2017) ("courts in [the Eighth] [C]ircuit regularly grant service awards of $10,000 or greater"). *Scott v. Dart*, 99 F.4th 1076, 1087

(7th Cir. 2024) ("The most recent empirical study on incentive awards reviewed approximately 1,200 class actions from 2006 to 2011 and found that the median incentive award per named plaintiff was $5,250 (or $7,125 in 2023 dollars).") (citation omitted).

Here, the requested service award of $5,000 is relatively modest and is supported by the relevant factors. First, without the Class Representatives' willingness to reach out to counsel, provide relevant information, review the complaint, and approve the settlement, there would be no class action recovery at all. Second, the recovery obtained is substantial, as outlined above. Third, by putting her name on a class action in federal court, the Class Representative necessarily exposes herself to the reputational risk that thousands of people may one day know her name and that she was terminated from her employment, as well as the potential stigma of being flagged as "litigious" during background or employment searches. Thus, the award is appropriate.

### X. The Court Should Approve Class Counsel's Request for Expenses

"Expense awards are customary when litigants have created a common settlement fund for the benefit of a class." *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 381 (S.D. Ohio 2006) (awarding requested expenses as "reasonable and necessary expenses"). Here, Class Counsel respectfully requests that the Court reimburse expenses of $5,857.51 in filing fees and associated costs (including the costs of the mediation), in addition to $16,500 in costs for the Administration of the Settlement, reflecting the out-of-pocket expenses incurred in this case. *See* Stranch Decl., ¶ 23; Administrator Decl., ¶ 15; Marquez Decl., ¶ 7. In total, this amounts to $22,357.51 incurred in expenses so far. These charges were fair, reasonable, and incurred for the benefit of the Class, and therefore should be reimbursed.[5] Decl. of Lindsey Marquez, ¶ 7.

[5] Class Counsel also respectfully requests that the Court authorize payment of any additional costs and expenses that will be reasonably incurred by Class Counsel through the final resolution of this lawsuit, including transaction fees incurred by the sale of any stock.

## XI. CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court grant final approval to the Class Settlement Agreement. Moreover, Plaintiff respectfully requests that the Court (1) affirm the appointment of J. Gerard Stranch, IV of Stranch, Jennings & Garvey, PLLC as Class Counsel, (2) affirm Plaintiff as Class Representatives, (3) grant her motion for attorneys' fees and expenses, and (4) grant her request for a Class Representative Service Award.

Dated: May 7, 2026

Respectfully submitted by,

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV (TN BPR 023045)
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
gstranch@stranchlaw.com

***Attorneys for Plaintiff and the Putative Class***

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of May, 2026, the foregoing document was filed with the Clerk of the Court using the Court's CM/ECF system, which will serve on all counsel of record.

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV (TN BPR 23045)